UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **WILLIE G. GAYFIELD** | **CIV. ACTION NO. 3:20-00782** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the court is Plaintiff Willie G. Gayfield's ("Gayfield") petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

On April 18, 2018, Gayfield protectively filed the instant application for Title II disability insurance benefits. (Tr. 10, 172-175).[1] Gayfield, who was 49 years old at the time of the administrative hearing, alleged disability as of April 26, 2014, because of back and hip problems, nerve pain in his legs, and left lower extremity numbness. (Tr. 215, 229). The state agency denied the claim on August 6, 2018, at the initial stage of the administrative process. (Tr. 60-91). Thereafter, Gayfield requested and received a July 16, 2019 hearing before an Administrative Law Judge ("ALJ"). (Tr. 26-59). In a September 5, 2019 written decision, the

---

[1] Gayfield filed a prior application for benefits on June 19, 2015 (Tr. 165-171), which was denied initially on August 12, 2015, and apparently not further appealed. (Tr. 74).

ALJ determined that Gayfield was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 7-19). Gayfield appealed the adverse decision to the Appeals Council. On April 23, 2020, however, the Appeals Council denied Gayfield's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 22, 2020, Gayfield filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## **Standard of Review**

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. ' 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. ' 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. ' 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. § 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. '§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. § 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 12-13). At step two, he found that the claimant suffered severe impairments of lumbar degenerative changes status post L5-S1 discectomy and L5-S1 fusion, plus obesity. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

### II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[2] except that he was limited to occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and only occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 13- 17).

### III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the

---

[2] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

5

sequential evaluation process that the claimant was unable to perform his past relevant work. (Tr. 17). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with a high school education, and the ability to communicate in English. *Id*. Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that, given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 18-19. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of price marker, *Dictionary of Occupational Titles* ("DOT") Code # 209.587-034; cashier II, DOT # 211.462-010; and cafeteria attendant, DOT # 311.677-010, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 18, 56).[3]

## Analysis

Pursuant to the court's scheduling order, Gayfield was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (Dec. 22, 2020, Sched. Order [doc. # 9]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke

---

[3] The VE responded that for the price marker, cashier II, and cafeteria assistant jobs there were 311,150, 876,650, and 66,100 positions available nationwide, respectively. (Tr. 18, 56). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

the appellate function of the federal court." *Id*.

In his appeal brief to this court, Gayfield stated that the ALJ erred by failing to grant him disability based on his medical records and because he did not consider his high school education level to "help [him] find gainful employment for the future." (Pl. Brief [doc. # 13]). He also pointed out that the record contained premature, i.e., incorrect, notation(s) of his death. Gayfield further argued that the ALJ ignored his doctor's restrictions that he cannot 1) stand for long periods of time; 2) lift anything over 20 pounds; and 3) bend without pain to his back and legs. *Id*. Gayfield also attached 54 pages of additional medical records reflecting his care at the Morehouse Community Center for the period from May 2020 until April 2021. *See* doc. # 13-1.

From what the court may discern by way of Gayfield's memoranda and submissions, he principally challenges the ALJ's residual functional capacity assessment ("RFC") and the subsequent step five determination. Gayfield also urges the court to consider new evidence that post-dates the relevant period. The court will address these arguments, in turn.

**I.     RFC**

The relevant period at issue in this case spans over four years from the claimant's alleged disability onset date in April 2014 until the date that he was last insured for disability insurance benefits, which was September 30, 2018. *See* Tr. 10, 12. Following a workplace injury to his lumbar spine in April 2014, Gayfield attended physical therapy until September 2014. In December 2014, Gayfield received two lumbar epidural steroid injections, which afforded him temporary relief. By June 2015, however, Gayfield's pain had returned, and, in March 2016, he underwent a discectomy at L5-S1.

Gayfield initially did well post-surgery and his treating neurosurgeon, Anthony Sin,

M.D., released him to return to work without restrictions on April 11, 2016. *See* Tr. 405. Gayfield, however, never returned to work. Instead, he started experiencing lower back and buttock pain and returned to Dr. Sin on June 3, 2016. *See* Tr. 407-408.

On August 15, 2016, Gayfield again saw Dr. Sin where he continued to report lower back and bilateral leg pain. (Tr. 402-403). He had been unable to resume work because of his pain level. *Id*. Gayfield explained that his pain had been better until he started physical therapy and then it had worsened. *Id*. An August 12, 2016, MRI of the lumbar spine did not show any re-herniation at L5-S1. *Id*. However, he had persistent hypertrophic facets and degenerative disc disease. *Id*. Dr. Sin opined that Gayfield might benefit from posterior decompression and fusion at L5/S1 if his low back pain continued. *Id*.

On January 19, 2017, Gayfield received a "Second Medical Opinion" from Donald Smith, M.D. (Tr. 379-380). Smith felt that Gayfield had lumbar disc disease, which was symptomatic. *Id*. He opined that Gayfield had a permanent impairment that would preclude performance of *heavy* work activities. *Id*. Nonetheless, he believed that Gayfield should be capable of returning to a wide variety of *light* work activities. *Id*. Smith stated that Gayfield was at maximum medical improvement at that time. *Id*.

The next month, Gayfield returned to University Health-Shreveport for follow-up. (Tr. 399-400). He reported occasional difficulty walking because of pain in his feet. *Id*. He had received injections since his last visit, which provided short-lived relief. *Id*. It was noted that he still had a lot of pain and that he likely needed a spinal fusion. *Id*.

In late April 2017, Gayfield underwent an L5-S1 TLIF procedure with bilateral screws. *See* Tr. 376-378.

Gayfield returned to University Health-Shreveport on May 26, 2017, for a post-operative

8

examination where he stated that his lower back pain had mostly improved and radiculopathy to his lower extremities had completely resolved. (Tr. 395-396). He had been wearing a lumbar brace when increasing his activity level, but had not been lifting more than ten pounds. *Id*. He was positive for numbness, but negative for weakness. *Id*. He exhibited 5/5 strength in his bilateral lower extremities. *Id*. Physical therapy was ordered. *Id*.

On August 14, 2017, Gayfield presented for post-surgery follow-up. (Tr. 392-394). He reported only occasional lower back pain/aching. *Id*. He stated that all left lower extremity pain had resolved postoperatively. *Id*. He did not attend physical therapy for the last two weeks because it had caused lower back soreness, which had since resolved. *Id*. He reported that prolonged sitting caused lower back aching. *Id*. His x-rays looked good, however. *Id*. Dr. Sin said that Gayfield could return to work when he was ready. *Id*.

On August 31, 2017, Gayfield received another "Second Medical Opinion" from Donald Smith, M.D. (Tr. 376-378). Dr. Smith noted that Gayfield had undergone two procedures: a lumbar disc excision and a TLIF, with pedical screw fusion. *Id*. Despite these procedures, however, Gayfield continued to experience difficulty and pain. *Id*. At that time, Gayfield was complaining of pain in his low back area and into his left leg with some left foot weakness. *Id*. Upon examination, Gayfield moved about the office very slowly, but had an essentially normal gait. *Id*. Range of motion of the lower back was very limited to any voluntary requests. *Id*. Gayfield complained of pain with straight leg raising, bilaterally. *Id*. However, there was no definite sensory loss, and his motor strength appeared normal. *Id*.

Smith diagnosed lumbar surgery x2, with some emotional magnification of pain and symptoms. *Id*. Smith did not believe that Gayfield was at maximum medical improvement. *Id*. He recommended physical therapy and a functional capacity evaluation thereafter. *Id*.

Smith did not believe that Gayfield was capable of returning to heavy work activities on a permanent basis. *Id*. Rather, Gayfield required a functional capacity evaluation to specify his precise restrictions. *Id*.

On March 6, 2018, Gayfield saw Richard Ballard, M.D., with a chief complaint of left leg pain. (Tr. 382-383). He described aching in his left leg that was an eight on a ten-point scale. *Id*. His pain continued to permeate into his hip and thigh areas. *Id*. Ballard remarked, however, that he really did not see any orthopedic pathology. *Id*. Ballard diagnosed lumbar radiculopathy and prescribed Zanaflex. *Id*.

On June 22, 2018, Gayfield returned to Dr. Sin at University Health-Shreveport after having fallen down the stairs a few weeks earlier. (Tr. 385-387). He reported increased pain, but was feeling better at that time. *Id*. Gayfield had resumed some work-related activity. *Id*. Upon examination, Gayfield had good strength and a stable gait. *Id*. Sin diagnosed chronic midline low back pain, without sciatica, and degenerative disc disease of the lumbar spine. *Id*. Gayfield's x-rays looked good, and Sin opined that no further neurosurgical intervention was warranted at that time. *Id*. He was to return to the clinic in February 2019. *Id*. However, there is no indication that he ever did.

In his decision, the ALJ reviewed the available evidence, including the hearing testimony, Gayfield's activities of daily living, treatment records, statements from Gayfield's treating and consultative physicians, and the impressions of the agency physicians. (Tr. 13-17).

To be sure, the medical records suggest that Gayfield's treating neurosurgeon, Dr. Sin, and the consultative physician, Dr. Smith, did not believe that he could return to his past relevant work at the heavy exertional level. However, the ALJ limited Gayfield's RFC to work at the light exertional level.

Moreover, Gayfield has not identified any instances in the administrative record where his treating medical providers imposed any long-lasting limitations of functioning greater than the limitations recognized by the ALJ. Certainly, no provider has indicated that he is disabled or unable to work. To the contrary, the only medical professionals to have assessed the effects of Gayfield's various impairments issued opinions that were consistent with the ALJ's RFC.

For example, on August 12, 2015, non-examining agency physician, Jonathan Norcross, M.D., reviewed the record and issued an RFC for light work limited to occasional climbing ramps/stairs, occasional climbing ladders/ropes/scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 66-68). Similarly, on August 3, 2018, non-examining agency physician, Sheryl Smith, M.D., reviewed the record and issued an RFC for light work limited to frequent climbing ramps/stairs, ladders/ropes/scaffolds; unlimited balancing; and occasional stooping, kneeling, crouching, and crawling. (Tr. 80-81).

Ultimately, the ALJ reduced Gayfield's RFC to a limited range of light work, which represents a serious and significant limitation of functioning to account for the effects of Gayfield's impairments. Gayfield, however, maintains that the ALJ did not go far enough, and, in support, relies on his own self-professed limitations of functioning. Nonetheless, the ALJ determined that Gayfield's statements concerning the intensity, persistence and limiting effects of his symptoms were *not* consistent with the medical evidence and other evidence in the record. (Tr. 14). Indeed, Dr. Smith remarked that Gayfield had some emotional magnification of pain.

In the end, where the objective medical evidence and the opinions of the medical professionals conflicted with Gayfield's own testimony and self-described limitations, the ALJ credited the former. This credibility determination was well within the ALJ's discretion and is supported by substantial evidence.

11

**II.    Step Five**

At step five of the sequential evaluation process, the ALJ posited a hypothetical(s) to a vocational expert that contemplated Gayfield's vocational factors – including the fact that he had a high school education – plus his RFC.   (Tr. 32, 55-56).   It is manifest that a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).   Here, the ALJ's hypothetical(s) to the vocational expert substantially incorporated the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence.   *See* discussion, *supra*.

**III.    New Evidence**

Finally, in connection with his appeal to this court, Gayfield adduced additional treatment records that were not before the ALJ or the Appeals Council, and which post-date not only the Commissioner's final decision in this matter, but also the last date that he was insured for purposes of disability insurance benefits.   In other words, these medical records were not part of the administrative record.   Thus, at best, the court could remand the matter to the Commissioner for consideration of Gayfield's recently adduced evidence.   However, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)).   To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record.   *Id.*   (citation omitted).   The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination.   *Id.*   Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.   *Id.*

Gayfield's new medical records do not satisfy the foregoing criteria. The records date from May 2020 through April 2021. See doc. # 13-1. However, there is no indication that the treatment records reflect Gayfield's impairments during the relevant period, i.e., as of September 30, 2018 – the date he was last insured for benefits -- as opposed to a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).

Gayfield also has not suggested any explanation for his failure to incorporate the "new" evidence into the medical record. *Pierre, supra* (good cause for remand is not met unless plaintiff provides proper explanation to excuse his failure to submit the evidence earlier). "[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citation omitted).

In sum, Gayfield has neither established that the post-decision evidence is material, nor demonstrated good cause for failing to incorporate the evidence into the administrative record. *Pierre, supra*. Accordingly, Gayfield is not entitled to remand. *Id*.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and, according to Gayfield, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

No matter how sympathetic the court may be to Gayfield's situation, he still is obliged to

establish that he is disabled *within the meaning of* the Social Security Act. The court emphasizes that it may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, *even if the evidence weighs against the Commissioner's decision.*" *Newton, supra* (emphasis added). The limited two-pronged issue before the court is whether the Commissioner's determination that Gayfield was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Upon review of the arguments presented, the court is satisfied that the Commissioner's decision comports with the foregoing standard. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. '636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 4th day of August, 2021.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE